UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC CRODDY *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 00-651 (EGS) |
| v. | ) ) | |
| FEDERAL BUREAU OF INVESTIGATION *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Plaintiffs bring this action raising numerous claims in connection with their non-selection for employment by Defendants, the Federal Bureau of Investigation ("FBI") and the United States Secret Service ("Secret Service"). Specifically, Plaintiffs allege that they applied for employment with Defendants, that as part of the application process they were required to take a polygraph examination, and that as a result of that examination they were not offered employment. They contend that the polygraph testing is unreliable, that their "false positives" improperly served as the basis to deny them employment with these agencies, and these results affect their potential employment with other law enforcement agencies. Plaintiffs claim that the use of polygraph examinations in the application process violates the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the

1

Fifth Amendment, and the Constitutional right to privacy.

Pending before the Court are Plaintiffs' motion for summary judgment, and Defendants' motion to dismiss in part and for summary judgment. Upon consideration of the parties' motions, the responses and replies thereto, and the entire record, the Court determines that Plaintiffs' constitutional claims fail on the merits, and that their administrative claims are either barred for lack of jurisdiction, or fail on the merits. Therefore, for the reasons stated herein, Plaintiffs' motion is **DENIED**, and Defendants' motion is **GRANTED**.

## BACKGROUND[1]

The FBI conducts polygraph examinations of applicants for employment to the FBI.[2]  DMF at 1.  Plaintiff Brian Weiler ("Weiler") applied for the position of Special Agent with the FBI in 1997, and underwent a polygraph examination in December 1999. DMF at 3.  Weiler did not pass the polygraph examination and his request for a second examination was denied.  DMF at 3. Plaintiff Susan Wright ("Wright") applied for the position of

---

[1] The parties have admitted that all of the following facts are not in dispute.

[2] Though Plaintiffs have introduced significant evidence on the question of whether polygraph examinations are reliable, the Court need not answer that question to resolve Plaintiffs' claims.  Therefore, the Court will not delve into the details of the polygraph examination process.

2

physical scientist forensic examiner with the FBI, and underwent a polygraph examination in November 1999.  DMF at 3-4.  Wright did not pass the polygraph examination and her request for a second examination was denied.  DMF at 4-5.  The FBI rejected Weiler and Wright's applications for employment because they failed the polygraph examinations.  DMF at 4; D's response at 4 n.3.

The Secret Service conducts polygraph examinations of applicants for employment for the position of Special Agent.  DMF at 5.  Applicants cannot proceed in the application process unless they pass the polygraph examination.  DMF at 6.  Plaintiff William Roche ("Roche") applied for the position of Special Agent with the Secret Service in 1999.  DMF at 7.  Roche did not pass two polygraph examinations and was not selected for employment as a Secret Agent.  DMF at 7-8.  Roche never applied for another law enforcement position after failing the Secret Service polygraph examination.  DMF at 8.

Plaintiff Darryn Mitchell Moore ("Moore") applied for the position of Special Agent with the Secret Service in 1988.  DMF at 9.  Moore did not pass two polygraph examinations and was not selected for employment as a Special Agent.  DMF at 9.  Moore voluntarily left a law enforcement job with the Atlanta Police Department to pursue journalism, his educational major.  DMF at 10.

Plaintiff Thomas Miller ("Miller") applied for the position of Special Agent with the Secret Service in 1994. DMF at 10. Miller did not pass two polygraph examinations and was not selected for employment as a Special Agent. DMF at 10-11. As of December 2003, Miller was working as a Special Agent with the Immigration and Customs Enforcement Agency, a law enforcement position within the Department of Homeland Security ("DHS"). DMF at 11.

Plaintiff Eileen Moynahan ("Moynahan") applied for a position of Special Agent with the Secret Service in 1993. DMF at 11. Moynahan did not pass three polygraph examinations and was not selected for employment as a Special Agent. DMF at 11-12. As of September 2003, Moynahan was working for the Drug Enforcement Agency ("DEA") as an intelligence research specialist, which is a law enforcement position. DMF at 12. Moynahan was hired in this position after disclosing to the DEA that she had failed the Secret Service's polygraph examination. DMF at 12-13.

**ANALYSIS**

Plaintiffs have brought three claims in this suit, alleging that: (1) Defendants' dissemination of the information that Plaintiffs failed polygraph examinations deprives them of their occupational and reputation-based liberty interests without due

4

process; (2) Defendants violated their constitutional right to privacy because they asked questions regarding their medical, psychological, sexual, criminal, and drug use histories during the examinations; and (3) Defendants' use of the polygraph examination in the employment process violates the APA.  Both parties seek summary judgment on all the claims.  In addition, Defendants ask the Court to dismiss the non-constitutional claims for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

**I. Standard of Review**

A motion under Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction.  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  The Court may resolve a Rule 12(b)(1) motion based solely on the complaint, or if necessary, may look beyond the allegations of the complaint to affidavits and other extrinsic information to determine the existence of jurisdiction.  *See id.* at 908; *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992).  The Court must accept as true all the factual allegations contained in the complaint, but the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence.  *Bennett v. Ridge*, 321 F. Supp. 2d 49, 51-52 (D.D.C. 2004).

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and

that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

**II. Due Process Claims**

Plaintiffs claim that Defendants have damaged their reputations and occupational prospects without due process of law by disseminating the defamatory results of their polygraph examinations. In particular, they claim that Defendants have published their findings that Plaintiffs failed polygraph examinations, and thus injured Plaintiffs' job prospects with other federal law enforcement agencies.

In order to establish a violation of procedural due process, Plaintiffs must show that they were deprived of a constitutionally protected interest. *See Graham v. DOJ*, 2002 WL 32511002, at *4 (D.D.C. 2002). A claim for deprivation of a

liberty interest based on the defamatory statements of government officials in combination with an adverse employment action may proceed on one of two theories. *See Holman v. Williams*, 436 F. Supp. 2d 68, 78 (D.D.C. 2006). The two theories are referred to as "reputation-plus" and "stigma or disability." *See id.* at 78-79.

Under the "reputation-plus" theory, an employee's liberty interest is infringed when there is "official defamation" accompanied by either a "discharge from government employment *or at least a demotion in rank or pay*." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). Plaintiffs' claims do not satisfy either prong of the "reputation-plus" standard. Government-disseminated information must be false in order to be considered defamatory. *See Graham*, 2002 WL 32511002, at *4 n.2 (holding that a letter was not defamatory because its contents were not false); *see also Codd v. Velger*, 429 U.S. 624, 628 (1977) (holding that no hearing was required because plaintiff did not allege that government's report was false). Though reports that Plaintiffs failed polygraph examinations may imply that they lied or had used drugs, the reports are technically accurate – there is no dispute that Plaintiffs did in fact fail the Defendants' examinations. Therefore, information about Plaintiffs' polygraph results do not constitute defamation. *See Graham*, 2002 WL 32511002, at *4 n.2.

In addition, Plaintiffs fail the second prong of the "reputation-plus" standard because they were neither discharged nor demoted – they were merely not offered a position. *See O'Donnell*, 148 F.3d at 1140.[3] The D.C. Circuit has explained that a discharge or demotion is required to ensure that the damage to the employee's reputation is sufficiently severe, and to limit the scope of permissible due process claims. *See id.* Even accepting Plaintiffs' characterization of Defendants' actions as revoking conditional offers of employment, those actions constitute neither a discharge nor demotion from an employment position. Therefore, Plaintiffs have not demonstrated the loss of a liberty interest under the "reputation-plus" theory.

Under the second liberty interest theory, deemed "stigma or disability," a plaintiff's liberty interest is infringed when there is an "adverse employment action and a stigma or other disability" that forecloses the plaintiff's freedom to take advantage of other employment opportunities. *Id.*; *Holman*, 436 F.

---

[3] Plaintiffs cite to several cases, *White v. OPM*, 787 F.2d 660 (D.C. Cir. 1986), *Waltentas v. Lipper*, 636 F. Supp. 331 (S.D.N.Y. 1986), and *Doe v. United States Civil Service Commission*, 483 F. Supp. 539 (S.D.N.Y. 1980), to argue that job applicants have the same due process rights as employees. These cases are inapposite, however, because they discuss "stigma or disability"-type due process claims. *See White*, 787 F.2d at 665; *Waltentas*, 636 F. Supp. at 337; *Doe*, 483 F. Supp. at 569-70.

8

Supp. 2d at 79.[4]  The government action and stigma must "seriously affect[], if not destroy[]" the plaintiff's ability to pursue her chosen profession.  *O'Donnell*, 148 F.3d at 1141 (quoting *Kartseva v. State Dep't*, 37 F.3d 1524, 1529 (D.C. Cir. 1995)).  A plaintiff's job prospects are sufficiently damaged if the official action either automatically bars the plaintiff from a range of government positions, or generally blocks her from pursuing employment in her chosen field of interest.  *Holman*, 436 F. Supp. 2d at 79.

In this case, Plaintiffs concede that they have no evidence that Defendants disseminated their polygraph results, or that they were denied any job, other than with the Defendants, because of their polygraph examinations.  *See* Pls.' Reply to Opp'n to Pls.' Mot. for Summ. J. at 4-5.  In fact, Miller and Moynahan attained law enforcement positions with the DHS and DEA respectively, notwithstanding their failed polygraph examinations.  Plaintiffs invite the Court to speculate that publication of their polygraph results will necessarily lead to the elimination of otherwise available job opportunities.  The

---

[4] It is unclear whether a published statement must be false in order to constitute a "stigma or disability."  The Court, however, will assume that dissemination of Plaintiffs' polygraph results does constitute a "stigma or disability" because the results call into question Plaintiffs' fitness for law enforcement positions.

Court, however, has no basis for doing so.[5]  Just as the FBI and Secret Service do not conclusively rely on the polygraph results of other agencies,[6] other agencies may not rely on Defendants' results.  Absent any evidence that Defendants' actions have foreclosed Plaintiffs' other job opportunities, Plaintiffs have not demonstrated the loss of a liberty interest under the "stigma or disability" theory.  *See Graham*, 2002 WL 32511002, at *5.

Because Plaintiffs have not shown that Defendants deprived them of a protected liberty interest, their procedural due process claims fail as a matter of law.

### III. Constitutional Right to Privacy

Plaintiffs claim that Defendants violated their constitutional right to privacy because they asked Plaintiffs questions regarding their medical, psychological, sexual, criminal, and drug use histories during their polygraph examinations.  In particular, Plaintiffs challenge the Secret

---

[5] Plaintiffs attempt to establish that merely having damaging information in personnel files is sufficient to show that access to a profession has been foreclosed.  Precedent from this Circuit, however, demonstrates what is lacking in this case.  In *Old Dominion Dairy v. Secretary of Defense*, 631 F.2d 953 (D.C. Cir. 1980), the court recognized a valid due process claim because there was direct evidence that damaging information led to specific denials of government contracts for a private contractor.  *Id.* at 955-59.  Plaintiffs have presented no such evidence in this case.

[6] *See* Defs.' Ex. 1 at 49-50 (deposition of Gregory Gilmartin); Defs.' Ex. 13 at 152-53 (deposition of Scott Myers).

Service's practice of asking applicants whether they had committed adultery and other sexual crimes.[7]

The D.C. Circuit has expressed grave doubts as to whether there is a Constitutional right protecting the disclosure of confidential information. *See Am. Fed'n of Gov't Employees v. HUD*, 118 F.3d 786, 791 (D.C. Cir. 1997). The court, however, has not directly resolved the question. *See id.* at 793. Instead, in that case, the court held that even assuming the right exists, it was not violated by the employee questionnaires utilized by the Department of Housing and Development ("HUD") and the Department of Defense ("DOD"). *See id.* at 793-95. The court held that HUD could legitimately inquire into their potential employees' drug use and financial troubles because they would be in positions of public trust. *Id.* at 794 ("When presented with a reasonable determination we are reluctant to second-guess the agencies' conclusions."). The court was even more reluctant to reject the DOD procedures because they concerned national defense and security, and approved questions regarding the employees' mental health and expunged criminal history. *See id.*

---

[7] Plaintiffs make much of the fact that the Secret Service asks applicants whether they have had sex with animals. The record shows, however, that the agency's question to applicants is whether they have ever committed a "serious crime," and the polygraph examiner explains what is meant by a "serious crime" by showing the applicant a list of crimes the agency considers to be serious. Sex with animals happens to be on that list, along with 28 other crimes. Defs.' Ex. 26 at 73-75 (deposition of Scott Myers); Defs.'Ex. 27 (list of crimes).

In this case, Plaintiffs were applying for positions of public trust concerning the security of the nation and of our elected officials. Therefore, even assuming there exists a constitutional right to non-disclosure of private information, Defendants can legitimately inquire into the applicants' financial, drug use, health, and criminal history. *See id.* at 793-94.[8] With regard to the Secret Service's specific questions, the agency has made a reasonable determination that there is a danger if its employees in sensitive positions could be blackmailed for some reason. The Court will not second-guess that conclusion, and therefore the agency can legitimately ask whether applicants committed adultery or serious crimes. *See id.* at 793. Accordingly, the Court rejects Plaintiffs' constitutional privacy claims as a matter of law.

**IV. APA Claims**

Plaintiffs claim that Defendants' use of polygraph examinations violates the APA. In particular, they argue first that Defendants violated their own regulations in denying

---

[8] For support, Plaintiffs rely on one case from the Ninth Circuit, *Thorne v. El Segundo*, 726 F.2d 459 (9th Cir. 1983) (holding that inquiry into sexual history of a police officer applicant violated her constitutional right to privacy because the questioning was not narrowly tailored). *Thorne*, however, rested principally on the facts that there were absolutely no standards or guidelines for the detailed questioning of the applicant's sexual history, and that her admission of an affair with a police officer was one of the reasons she was denied employment. *See id.* at 469-71. Plaintiffs have made no such allegations in this case.

12

employment solely on the basis of failed polygraph examinations. Second, they argue that Defendants' practice of denying employment solely on the basis of failed polygraph examinations is arbitrary and capricious.

The APA provides for judicial review of a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and allows for judicial review "except to the extent that . . . (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law," 5 U.S.C. § 701(a). *Mistick PBT v. Chao*, 440 F.3d 503, 509 (D.C. Cir. 2006). Defendants argue that relief under the APA is unavailable for several reasons: (1) the Civil Service Reform Act of 1978 ("CSRA") and Privacy Act preclude APA review; (2) the actions at issue are committed to agency discretion by law; and (3) the APA claims fail on the merits.

**A. Preclusion of APA Claims by Other Statutes**

The CSRA is a comprehensive statute that prescribes protections and remedies for federal civil servants. *See Graham v. DOJ*, 2002 WL 32511002, at *2 (D.D.C. 2002). It is well-settled that the CSRA precludes all other claims challenging federal personnel actions, included APA claims. *Id.* Even if the CSRA does not provide a remedy for a particular federal employee, the CSRA still precludes personnel-based APA claims because that means the contested action is committed to agency discretion by

law.  *See id.* at *2-3.  Therefore, the fact that the FBI is generally exempted from the CSRA's scheme does not diminish the scope of the CSRA's preclusive effect.  *See id.* at *2; 5 U.S.C. § 2302(a)(2)(C)(ii); *Graham v. Ashcroft*, 358 F.3d 931, 934-35 (D.C. Cir. 2004) (holding that employees' personnel claims are still precluded even if the CSRA does not provide a remedy for a particular type of personnel action).  This preclusion remains in effect even for claims that an agency has violated its own regulations.  *See Graham*, 358 F.3d at 935.

Therefore, the determinative question is whether Plaintiffs' APA claims fall within the purview of the CSRA.[9]  Applicants for federal employment are also covered by the CSRA.  *See Spagnola v. Mathis*, 859 F.2d. 223, 225 n.3 (D.C. Cir. 1988) (per curiam).  The "prohibited personnel practices" Congress included in the CSRA remedial scheme are set forth at 5 U.S.C. § 2302.  *Id.* at 225.  The definition sweeps broadly to address the "tak[ing] or

---

[9]  Plaintiffs contend that Defendants are estopped from arguing that the CSRA precludes their APA claims.  They state that Defendants' rejection letters to the Plaintiffs did not discuss remedies available under the CSRA, and Plaintiffs were unaware of such remedies.  Estoppel against the government, even if such claims are allowed, requires a showing of affirmative government misconduct.  *See Int'l Union v. Clark*, 2006 WL 2598046, at *12 (D.D.C. 2006).  In addition, the Supreme Court has found that the provision of erroneous information, without more, cannot give rise to an equitable estoppel claim against the Government.  *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 428-29 (1990).  As Plaintiffs have made no showing of misconduct, and their argument concerns only the provision of information, Plaintiffs' estoppel argument is rejected.

fail[ure] to take any . . . personnel action if the taking or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title." *Id.*; 5 U.S.C. § 2302(b)(11). One such merit principle provides: "All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management." § 2301(b)(2). Plaintiffs' claim that Defendants' reliance on polygraph results is arbitrary, or that the polygraph process is somehow unfair, directly implicates this principle, and therefore would be considered a prohibited personnel practice. *See Spagnola*, 859 F.2d. at 225 n.3. Plaintiffs' APA claims thus fall within the ambit of the CSRA, and are therefore precluded.[10]

**B. Whether Actions are Committed to Agency Discretion**

Were Plaintiffs' APA claims not precluded by the CSRA, they are still barred in part because they challenge actions committed to agency discretion. *See* 5 U.S.C. § 701(a)(2). FBI hiring

---

[10] The Defendants' argument that the APA claims are also precluded by the Privacy Act, however, is unavailing. The Privacy Act, 5 U.S.C. § 552a, gives federal agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the government's part to comply with the requirements. *Maydak v. United States*, 363 F.3d 512, 515 (D.C. Cir. 2004). While the Privacy Act may address Plaintiffs' due process claims concerning the dissemination of their polygraph results, the Act does not address their APA claims, which attack Defendants' hiring decisions and processes. Therefore, the Privacy Act does not preclude APA review in this case. *See* 5 U.S.C. § 701(a).

decisions, in particular, have been held unreviewable under the APA because they are an exercise of agency discretion, and there is no meaningful statutory standard against which to judge the FBI's exercise of discretion.  *See Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987); 5 U.S.C. § 2302(a)(2)(C)(ii) (exempting FBI from CSRA).  Secret Service hiring decisions are similarly an exercise of agency discretion, and Plaintiffs have provided no statutory standard by which this Court can evaluate those decisions.  Therefore, Plaintiffs' claims that Defendants' use of polygraph examinations is arbitrary and capricious cannot be brought under the APA.  *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (holding that if Congress has not provided standards to judge an agency's discretion, it is unreviewable under 5 U.S.C. § 701(a)(2)).

Plaintiffs' APA claims that Defendants violated their own regulations, however, may still be considered.  "It is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion."  *Padula*, 822 F.2d at 100.  Therefore, Plaintiffs' APA claims based on regulations are not barred by 5 U.S.C. § 701(a)(2).  *See id.* at 100-01.

### C. Whether Defendants Violated Regulations

Plaintiffs challenge Defendants' policies of denying employment solely on the basis of failed polygraph exams.

16

Plaintiffs argue that Defendants' policies violate the instructions of DOD's Polygraph Institute ("DODPI"), and the FBI's Manual of Investigative Operations and Guidelines ("MIOG"). The DODPI instructions do not bar Defendants' policies, however, because they apply only to DOD, and are not binding on any other agencies. *See* Defs.' Ex. 23 at 55, 69-71 (deposition of William Norris). Plaintiffs cite no authority to show that the DODPI instructions are binding on Defendants. Therefore, Plaintiffs' claims based on the DODPI instructions fail as a matter of law.

Plaintiffs argue that the FBI's hiring policy contravenes several provisions of the MIOG.[11] The first, § 13-22.2(2) states that "[p]olygraph results are not to be relied upon to the exclusion of other evidence or knowledge obtained during the course of a complete investigation." The second, § 13-22.5, states that "[u]se of polygraph will in no way absolve Agents of their responsibility to conduct all logical investigation possible by conventional means in order to verify the truthfulness and accuracy of information furnished." The third, § 13-22.12(5) states that a "preemployment polygraph examination is one element of the overall applicant screening process [and] is not to be considered as a substitute for a thorough and complete background investigation."

---

[11] Excerpts of the MIOG were submitted as "Exhibit 32" to Plaintiffs' Motion for Summary Judgment.

The first and second provisions cited by Plaintiffs refer to the use of polygraphs in general criminal investigations, and not specifically to the hiring process. *See* § 13-22.2(2) ("The following general policies apply to the use of the polygraph by the FBI."). In contrast, § 13-22.12 specifically covers polygraph examinations of FBI applicants. While § 13-22.12(5) does state that the polygraph examination is only part of the screening process, the FBI's policy does not violate that provision. Had Plaintiffs passed the polygraph examination, they still would have been subject to a complete background examination.

In fact, the FBI's decision to deny employment to Weiler and Wright on the basis of their polygraph results is fully consistent with a more specific, relevant MIOG provision. Section 67-8.2.1(6)(b) states that for non-FBI personnel seeking FBI employment, applicants who "fail the initial polygraph examination yet deny practicing deception or withholding information will be disqualified from further processing except in those circumstances where an appeal has been granted." As Weiler and Wright's appeals were denied, they were accordingly disqualified from further consideration. Therefore, Plaintiffs' claims based on the FBI MIOG fail as a matter of law.

**CONCLUSION**

The Court finds that Plaintiffs' constitutional claims fail as a matter of law.  Plaintiffs' APA claims are dismissed for lack of jurisdiction because they are precluded by the CSRA.  In the alternative, Plaintiffs' APA claims based on Defendants' regulations are rejected as a matter of law, and any other APA claims are barred because they challenge actions committed to the agencies' discretion.

Accordingly, Plaintiffs' motion for summary judgment is **DENIED** and Defendants' motion to dismiss in part and for summary judgment is **GRANTED.**  An appropriate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
           **United States District Judge**
           **September 29, 2006**